IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| CASSANDRA JOHNSON LANDRY. | * | Chapter 7 |
| | * | Case No. 18-55697-lrc |
| Debtor, | * | Judge Lisa Ritchey Craig |
| | * | |
| GEORGIA DEPARTMENT OF | * | |
| COMMUNITY HEALTH, | * | |
| | * | **Adv. No.** _____ |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CASSANDRA JOHNSON LANDRY, | * | |
| | * | |
| Defendant. | * | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY**
**OF DEBT UNDER 11 U.S.C. § 523(a) AND FOR JUDGMENT**

COMES NOW, the Georgia Department of Community Health, ("the Department"), in the above-styled case, by and through counsel, Christopher M. Carr, Attorney General of the State of Georgia, objects to the discharge of the debt owed by Cassandra Johnson Landry, ("Defendant-Debtor"), pursuant to 11 U.S.C. § 523(a) and Fed. R. Bankr. P. 7001(6), and shows the Court as follows:

**JURISDICTION**

1.

Pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334, this Court has jurisdiction to determine the rights of the parties as to a determination of dischargeability of Defendant-Debtor's debt under 11 U.S.C. § 523(a).

#1069369

2.

Venue is property as provided by 28 U.S.C. 1409(a).

3.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (O).

4.

This is an action pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B), as provided by Fed. R. Bankr. P. 4007(a) and (b), and Fed. R. Bankr. P. 7001(6).

**GENERAL ALLEGATIONS**

5.

The Department incorporates ¶¶ 1- 4 by reference as if fully restated.

6.

Defendant-Debtor's bankruptcy address of record shows she is a resident of Gwinnett County with an address of 869 Natchez Valley Trace, Grayson, Georgia, 30017.

7.

Defendant-Debtor, acting Pro Se, filed a Chapter 13 petition on April 3, 2018, (Case No. 18-55697-lrc).  Defendant-Debtor requested that her case be converted to a Chapter 7. [Notice of Conversion, d.e. # 72].  Defendant-Debtor's bankruptcy case was converted to a Chapter 7 case on September 14, 2018.  The Defendant-Debtor has continued to represent herself throughout this bankruptcy case.

8.

Defendant-Debtor filed her Bankruptcy Schedules on April 3, 2018, and attempted to schedule the Department as a creditor.  It appears that Defendant-Debtor

2

attempted to schedule the Department with notice to the Georgia Department of Behavioral Health, Two Peachtree St. NW, 24th Floor, Atlanta, GA, 30303.

9.

The deadline for creditors seeking a determination for the dischargeability of a debt in this Chapter 7 case is December 17, 2018.

10.

On September 19, 2018, the Department filed a proof of claim, ("Claim # 20-1"), showing a debt of $42,634.37 for overpayment of Medicaid claims.

11.

"Overpayment" means a payment to a provider that includes a payment "for a service for which reimbursement is not available under the State [Medicaid] Plan or other policy of the Division." *See* Medicaid Manual,[1] Part 1, Section entitled "Definitions," No. 56.

12.

The Department's Claim #20-1 is prima facie correct. *In re Richardson,* 2007 Bankr. LEXIS 5054 (Bankr. S.D. Ga. June 21, 2007). *In re Nejedlo*, 324 B.R. 697, 699 (Bankr. E.D. Wis. 2005).

13.

The Department's Claim #20-1 is allowed as-filed unless or until entry of an order to the contrary.

---

[1] Georgia Medicaid Manuals can be found at
https://www.mmis.georgia.gov/portal/PubAccess.Provider%20Information/Provider%20Manuals/tabId/54/Default.aspx

14.

The Department is an agency[2] of the State of Georgia and, among other things, is responsible for administering the Medicaid Program in the State of Georgia. O.C.G.A. § 31-5A-4.

15.

The Department is charged with the administration and supervision of the Georgia Medicaid Plan in accordance with the requirements of Title XIX of the Social Security Act of 1935, as amended, and O.C.G.A. § 49-4-1 *et seq*. *See* 42 C.F.R. § 431.10(e); and O.C.G.A. § 49-2-11(f).

16.

The Department is authorized to establish such rules and regulations as may be necessary or desirable to execute the State Medicaid Plan and to enter into such reciprocal and cooperative arrangements with other states, persons, and institutions, public and private, as it may deem necessary or desirable in order to execute the State Medicaid Plan. *Ga. Comp. R. & Regs. R. 350-1-.02 (2016)*.

17.

Medicaid provides medical assistance to certain individuals with low income and resources. *See* Medicaid Manual, Part 1, Chapter 100, Section 101.

18.

The Department is tasked with, among other things, overseeing the integrity of the Medicaid Program, including the appropriateness of payments.

---

[2] There are four health care agencies serving Georgia. They are: the Department of Community Health, the Department of Behavioral Health and Developmental Disabilities, the Department of Human Services, and the Department of Public Health.

4

19.

The Department pays enrolled providers within numerous reimbursable categories for covered services furnished to eligible members. *See* Medicaid Manual, Part 1, Chapter 100, Section 104.

20.

In order to receive reimbursement through the Medicaid Program, a provider must be enrolled with the Department in an appropriate service category. *See* Medicaid Manual, Part 1, Chapter 100, Section 105.

21.

A provider may enroll in the Medicaid Program by submitting an application to the Department. *Id.*

22.

Approval of the application is contingent upon verification of a provider's compliance with all policy requirements and may include a site audit of the provider's place of business. *Id.*

23.

The Department does not enroll group practices in the fee for service program. *Id.*

24.

Each provider must enroll at each location where services are provided to Medicaid members. *Id.*

25.

Alliance for Change Through Treatment, LLC, ("ACTT"), submitted an Enrollment Application, ("Application"), to the Department on or about January 1, 2013. *See* **Exhibit A** attached hereto.

26.

Pursuant to the Application, Cassandra Johnson-Landry, Defendant-Debtor, is a 50% owner of ACTT, along with her partner, Jeffrey E. Atkinson, who is the other 50% owner of ACTT. *Id*. at pg. 4.

27.

Pursuant to the Application, Defendant-Debtor's title and role in ACTT was as CEO and Managing Partner.

28.

ACTT is a limited liability company that has been registered with the Georgia Secretary of State since January 10, 2006. *See* **Exhibit B** attached hereto.

29.

ACTT filed Amended Articles of Organization, ("Articles"), with the Georgia Secretary of State on August 16, 2007. *Id.*

30.

The Articles show that the management of ACTT is vested in Defendant-Debtor, Cassandra Johnson-Landry, and Jeffrey Eugene Atkinson. *Id.*

31.

ACTT entered into a contract with the Department called a Statement of Participation, also known as a Provider Agreement, whereby Defendant-Debtor enrolled

in the Georgia Medicaid Program in order to render covered services to eligible Medicaid recipients under certain categories of service, and sought reimbursement for rendering such services. *See* **Exhibit C** attached hereto.

32.

In 2004, Defendant-Debtor became an eligible provider enabling her to provide medical services to members under the Georgia Medicaid Program.

33.

Since 2004, Defendant-Debtor has participated as a provider in the Georgia Medicaid Community Behavioral Health and Rehabilitation Services program through Medicaid Provider number xxxxxx294A.

34.

Since 2004, Defendant-Debtor also participated as a provider in the Community Based Alternatives for Youth program through Medicaid Provider number xxxxxx294B.

35.

Providers under the Georgia Medicaid Program are required to renew their Provider Enrollment Application and Statement of Participation contract with the Department annually, or as required by Georgia or Federal law, rule, regulation, or policy.

36.

Defendant-Debtor subsequently renewed her Provider Enrollment Application and Statement of Participation with the Department annually, or as required by Georgia or Federal law, rule, regulation, or policy.

37.

On January 25, 2015, the Department terminated ACTT from participating as a provider in the Georgia Medicaid Community Behavioral Health and Rehabilitation Services program through Medicaid Provider number xxxxxx294A.

38.

On January 25, 2015, the Department also terminated ACTT from participating as a provider in the Community Based Alternatives for Youth program through Medicaid Provider number xxxxxx294B.

39.

ACTT appealed and requested a hearing of the Department's decisions to terminate ACTT from participation as an approved Behavioral Health provider in the Georgia Medicaid Community Behavioral Health and Rehabilitation Services program providing Children and Adolescent Core and Intensive Family Intervention Services through Medicaid Provider Number xxxxxx294A; and as a provider in the Community Based Alternatives for Youth Services program through Medicaid Provider Number xxxxxx294B.

40.

On June 21-23, 2016, an administrative hearing was held before an administrative law judge. The Department was represented by Counsel. Defendant-Debtor was represented by Counsel.

41.

On August 3, 2017, the Administrative Law Judge, Richard L. Greene, entered an 18 page Notice of Final Administrative Decision and Notice of Right to Appeal,

("Administrative Decision"), affirming the Department's decision terminating ACTT's Statement of Participation and its two Medicaid Provider Enrollment numbers. *See* **Exhibit D** attached hereto. The effect of the Administrative Decision was that ACTT was terminated from participating as a provider in Georgia's Medicaid Program.

42

ACTT did not appeal the Administrative Decision. Therefore, the Administrative Decision became final thirty days later, on or about September 4, 2017. O.C.G.A. §§ 49-4-153 and 50-13-19.

43.

While acting as a provider in Georgia's Medicaid Program, as a condition of her contract with the Department, Defendant-Debtor was and remains responsible for compliance with all State and Federal Medicaid rules, regulations, laws, policies, and procedures.

44.

Defendant-Debtor, as a Georgia Medicaid Provider, agreed to comply with all of the Department's requirements applicable to the categories of service in which she would participate under the Statement of Participation, and with any and all state and federal manuals, including Part I, Part II, and the applicable portions of Part III of the Georgia Medicaid Manuals,[3] and with any amendments thereto. *See* Exhibit C, Section 2 entitled "Provider's Obligations," Sub-Section A.

---

[3] Georgia Medicaid Manuals can be found at
https://www.mmis.georgia.gov/portal/PubAccess.Provider%20Information/Provider%20Manuals/tabId/54/Default.aspx

9

45.

Defendant-Debtor agreed that the Statement of Participation, together with the Department's Policies and Procedures manuals, any program specific manuals, all enrollment documents, and any amendments thereto, would constitute the entire agreement between the Parties with respect to the subject matter contained therein. *See* Exhibit C, Section 4 entitled "General Provision," Sub-Section K.

46.

The Department does not enroll group practices in the fee for service program. Each Provider must enroll at each location where services are provided to Medicaid/PeachCare for Kids members. *See* Medicaid Manual, Part I, Chapter 100, Section 105.1(A),

47.

A "provider" means any individual or entity furnishing Medicaid services pursuant to a Statement of Participation (provider agreement) with the Department. *See* Medicaid Manual, Part I, Section entitled "Definitions," No. 65.

48.

Defendant-Debtor, while enrolled in the Georgia Medicaid Program, was considered a provider.

49.

According to the Georgia Medicaid Manual, an "owner (ownership interest)" means a person or corporation with an [interest] or control interest that:

a. Has an ownership interest totaling 5 percent or more in a disclosing entity;
b. Has an indirect ownership interest equal to 5 percent or more in a disclosing entity;

    c. Has a combination of direct and indirect ownership interests equal to 5 percent or more in a disclosing entity;
    d. Owns an interest of 5 percent or more in any mortgage, deed of trust, note, or other obligation secured by the disclosing entity if that interest equals at least 5 percent of the value of the property or assets of the disclosing entity;
    e. Is an officer or director of a disclosing entity that is organized as a corporation; or
    f. Is a partner in a disclosing entity that is organized as a partnership.

50.

Defendant-Debtor, while enrolled in the Georgia Medicaid Program, was considered an owner of ACTT as she fell within the definition of "owner."

51.

Pursuant to Part I, Chapter 100, Section 106(L), of Georgia's Medicaid Manual, as a general condition of participation, all enrolled providers must:

> "accept responsibility for every claim submitted to the Division that bears the provider's name or Medicaid/PeachCare for Kids provider number. Submission of a claim by a provider or his agent, acceptance of a Remittance Advice, or acceptance of claim payments constitutes verification that the services were performed by that provider (or under his direct supervision, if allowed by the Division) and that the provider authorized submission of the claim for reimbursement. Remittance Advices shall be deemed accepted if the provider does not notify the Division or its third party administrator to the contrary in writing within ninety (90) days after their issuance. Payments shall be deemed accepted when cashed, negotiated, or deposited, including those payments deposited electronically."

52.

Providers are personally responsible for every claim they submit to the Department.

53.

Defendant-Debtor is personally responsible for every claim that she, her agent, her company, including ACTT, submitted to the Department.

11

54.

Defendant-Debtor submitted claims to the Department for payment totaling at least $42,634.37.

55.

Pursuant to Part I, Chapter 100, Section 106(M), of Georgia's Medicaid Manual, as a general condition of participation, all enrolled providers must, "refund any overpayments to the Division within required timeframes."

56.

Providers are personally responsible for returning any overpayment received to the Department.

57.

Defendant-Debtor is personally responsible for returning to the Department any overpayments she, her agent, her company, including ACTT, received from the Department.

58.

Defendant-Debtor received overpayments totaling at least $42,634.37.  *See* **Exhibit E** attached hereto.

59.

Defendant-Debtor is personally responsible for returning at least $42,634.37 in overpayments to the Department.

60.

Overpayment determinations are appealable within 30 days of the date of the denial of claim payment.  *See* Medicaid Manual, Part I, Chapter 500, Section 502(A), ¶ 3.

61.

Failure to appeal, or appeal timely, constitutes a waiver of any and all future appeal rights, including the right to an administrative hearing.  *See* Medicaid Manual, Part I, Chapter 505, Section 502(A), ¶ 3.

62.

Defendant-Debtor did not appeal the overpayment determinations totaling at least $42,634.37.  Therefore, the overpayments determinations totaling at least $42,634.37 are final, and must be refunded to the Department.  Overpayments can be refunded by providers via lump sum payment to the Department or the Department can recoup the overpayments from future Medicaid payments made to providers.

63.

This Court should give preclusive effect to the Department's overpayment determination.

## COUNT I:  11 U.S.C. § 523(A)(2)(A)

64.
The Department incorporates by reference ¶¶ 1-63 as if fully restated.

65.

Pursuant to 11 U.S.C. § 523(a)(3)(B), the Department may obtain a determination of dischargeability regarding a kind of debt specified in § 523(a)(2)(A).  Fed. R. Bankr. P. 4007(b).

66.

Section 523(a)(2)(A) excepts from discharge any debt for money, property, services, or refinancing of credit, to the extent obtained by false pretenses, a false

13

representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

### *FALSE PRETENSES*

67.

"False pretense" involves implied misrepresentation or conduct intended to create and foster a false impression. *In re Palermo*, 2009 Bankr. LEXIS 695, (Bankr. D. Neb., March 20, 2009).

68.

Defendant-Debtor's submission of false claims amounted to false pretenses.

### *FALSE REPRESENTATION*

69.

A "misrepresentation" is not only words spoken or written, but also any other conduct that amounts to an assertion not in accordance with the truth. *In re Palermo*, 2009 Bankr. LEXIS 695, (Bankr. D. Neb. 2009).

70.

Defendant-Debtor's submission of false claims amounted to misrepresentation.

### *FRAUD*

71.

To establish fraud within the context of 523(a)(2)(A), a creditor has the burden of proving, by a preponderance of the evidence, the following: "(1) a representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditor's reliance was justifiable, and (7) that damage

proximately resulted from the misrepresentation." *See In re Dixon,* 525 B.R. 827, 840 (N.D. Ga. 2015), [*quoting In re Holmes,* 414 B.R. 115, 130 (E.D. Mich. 2009)].

72.

Defendant-Debtor's submission of false claims amounted to actual fraud.

### *REPRESENTATION*

73.

A "claim" includes any request or demand, made orally, in writing, electronically, or magnetically, for money which is made to the Georgia Medicaid program.

74.

The Medicaid claims submitted by Defendant-Debtor were written representations that Defendant-Debtor had provided the services for which she sought compensation.

75.

Defendant-Debtor made representations to the Department by the submission of claims for payment.

### *FALSE CLAIMS*

76.

False or fraudulent Medicaid claims include, any person who "knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval." O.C.G.A. § 49-4-168.1(a)(1).

77.

Defendant-Debtor made false representations to the Department by submission of false claims for payment.

15

### *MATERIAL*

78.

"Material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.  O.C.G.A. § 49-4-168(3).

79.

Defendant-Debtor's knowing submission of false claims to the Department for payment was material.

### *KNOWLEDGE*

80.

"Knowing" and "knowingly" requires no proof of specific intent to defraud and means that a person, with respect to information: "(A) has actual knowledge of the information; (B) acts in deliberate ignorance of the truth or falsity of the information; or (C) acts in reckless disregard of the truth or falsity of the information."   O.C.G.A. § 49-4-168(2).

81.

Defendant-Debtor knew the information in the claims was false when she submitted them.

82.

Defendant-Debtor knowingly submitted false claims for payment to the Department.

### *INTENT*

83.

The "intent" element merely requires an intent to induce a creditor to rely and act on the misrepresentation(s) in question. *In re Palermo*, 2009 Bankr. LEXIS 695, (Bankr. D. Neb. 2009).

84.

Creditor may present evidence of the surrounding circumstances from which intent may be inferred. *In re Palermo*, 2009 Bankr. LEXIS 695, (Bankr. D. Neb. 2009).

85.

"Intent to deceive can be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act." *In re Palermo*, 2009 Bankr. LEXIS 695, (Bankr. D. Neb. 2009).

86.

Intention to deceive a creditor must exist at the time of the misrepresentation, and be actual, not implied, *though gross recklessness may be sufficient*. *See In re Dixon,* 525 B.R. 827, 840 (N.D. Ga. 2015), [*quoting In re Holmes,* 414 B.R. 115, 130 (E.D. Mich. 2009)]. "Courts should look to the totality of the circumstances to determine intent." *Id.*

87.

Defendant-Debtor's knowing submission of false claims to the Department for payment was intentional.

### *JUSTIFIABLE RELIANCE*

88.

The Department relied on the veracity of each claim submitted by Defendant-Debtor

89.

The Department had no reason to believe that the claims being submitted by Defendant-Debtor were false claims.

90.

The Department's reliance was justified.

91.

The Department justifiably relied on Defendant-Debtor's representation that each claim submitted was accurate, and that is was not a false claim.

### *OBLIGATION*

92.

"Obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee based or similar relationship, from statute or regulation, or from retention of any overpayment. O.C.G.A. § 49-4-168(4).

93.

Defendant-Debtor had a duty from retention of any overpayment.

94.

Defendant-Debtor had an obligation to refund overpayment of claims.

18

95.

Defendant-Debtor failed to comply with Georgia's Medicaid Program requirements by failing to refund Medicaid overpayments to the Department.

***LOSS***

96.

The Department overpaid false claims submitted by Defendant-Debtor.

97.

The Department suffered financial loss by overpayment of false claims that were submitted by Defendant-Debtor.

98.

The Department suffered damages in the amount of at least $42,634.37.

WHEREFORE, the Georgia Department of Community Health, ("the Department"), respectfully prays:

(1) That the debt owed by Defendant-Debtor in the total amount of at least $42,634.37 be excepted from discharge, as it falls within the purview of 11 U.S.C. § 523(a)(2);

(2) That Defendant-Debtor's discharge under Chapter 7 as to the debt owed to the Department should be denied, pursuant to 11 U.S.C. § 727(b);

(3) For entry of a money judgment against Defendant-Debtor in favor of the Department in the total amount of at least $42,634.37, plus civil penalties, damages, interest, attorney fees and costs, pursuant to O.C.G.A. § 49-4-168.1(c); and

19

(4) That it be granted such other and further relief as the Court deems just and proper.

This 17th day of December, 2018.

Respectfully submitted,

| | |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| W. WRIGHT BANKS, JR.<br>Deputy Attorney General | 036156 |
| /s/ Julie Adams Jacobs<br>JULIE ADAMS JACOBS<br>Senior Attorney General | 003595 |
| /s/Whitney Groff<br>WHITNEY GROFF<br>Assistant Attorney General | 738079 |

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

WHITNEY GROFF
Assistant Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 651-6107
Fax: (404) 657-3239
wgroff@law.ga.gov